FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2022 APR -7 AM 11: 19

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA

v.

CASE NO. 8:22 cr 133 SCB-JSS

18 U.S.C. § 1956(h)

WILLIAM PEREZ

## INDICTMENT

The Grand Jury changes:

### COUNT ONE
### (Money Laundering Conspiracy)

**A.  Introduction**

At times relevant to this Indictment:

1. WILLIAM PEREZ, residing in the Middle District of Florida, played multiple roles in the money-laundering conspiracy, including that he: (1) retrieved fraudulently-obtained cashier's checks sent by victims via FedEx, (2) cashed the victims' checks, and (3) provided the fraud proceeds to others or deposited the proceeds into a bank account, as directed by other conspirators.

2. A "call center" was an organization, often located in India, staffed by individuals who made telephone calls to potential victims residing in the United States ("U.S."), and caused those victims to send money to the defendant and other conspirators by using false and fraudulent means, including Social Security Administration ("SSA") impersonation fraud.

3.     SSA impersonation fraud was a fraud scheme in which individuals working at India-based call centers impersonated SSA employees and misled U.S. residents to believe that their Social Security numbers had been compromised and that, in order to resolve the situation, the U.S. resident victims needed to send money to purported government agents.

### B.     The Conspiracy

4.     Beginning on an unknown date, but no later than in or around July 2018, and continuing through at least in or around September 2018, in the Middle District of Florida and elsewhere, the defendant,

### WILLIAM PEREZ,

along with N.P. and H.S., did knowingly and voluntarily combine, conspire, confederate, and agree with each other and with others, both known and unknown to the Acting United States Attorney, to commit certain offenses, to wit:

a.     knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did conduct, and attempt to conduct, a financial transaction, which in fact involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, with the intent to promote the carrying on of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

b.     knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did conduct, and attempt to conduct, a financial transaction which, in fact involved the proceeds of specified

unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

### C. Manner and Means of the Conspiracy

5. The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

    a. It was part of the conspiracy that the conspirators would and did engage in a scheme to extract money from victims by telephoning them and making false and fraudulent misrepresentations;

    b. It was further part of the conspiracy that conspirators would and did, at times, falsely and fraudulently represent themselves to be U.S. government officials, and would and did obtain money from said victims by falsely and fraudulently representing that the victim's Social Security number had been used in connection with criminal activity, and that in order to assist in the ongoing investigation and receive a new Social Security number, the victims needed to liquidate their financial accounts.

    c. It was further part of the conspiracy that conspirators would and did threaten the victims that they would face arrest, prosecution, or other legal consequences if they did not cooperate in the ongoing investigation;

d. It was further part of the conspiracy that conspirators would and did direct and instruct victims to transmit their money to the defendant and/or other conspirators by sending cashier's checks via Federal Express (FedEx);

e. It was further part of the conspiracy that the defendant and other conspirators would and did pick up the packages containing the cashier's checks sent by the victim's from FedEx locations in the Middle District of Florida and elsewhere and cash said checks at various banking institutions;

f. It was further part of the conspiracy that conspirators would and did direct and cause victims to transfer funds via interstate wire transfers, which conspirators converted to cash for various purposes, including to conceal from law enforcement agencies and financial institutions the identities of the victims, the nature of the financial transactions, and the sources of the fraud proceeds;

g. It was further part of the conspiracy that the defendant and/or other conspirators would and did provide the fraud proceeds to other conspirators in cash, so the proceeds could be concealed and further diverted as directed by coconspirators;

h. It was further part of the conspiracy that the defendant and/or other conspirators would and did deposit the fraud proceeds into other U.S. bank accounts as directed by conspirators;

i. It was further part of the conspiracy that conspirators would and did use the proceeds of the fraud scheme to cover costs associated with the scheme,

compensate conspirators involved in the scheme commensurate with their respective roles, and to otherwise promote and perpetuate the scheme; and

j. It was further part of the conspiracy that conspirators would and did engage in multiple meetings, perform acts, and make statements to promote and achieve the objects of the conspiracy and to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

In violation of 18 U.S.C. § 1956(h).

## FORFEITURE

1. The allegations contained in Count One of this Indictment are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(1).

2. Upon conviction of a violation of 18 U.S.C. § 1956(h) the defendant,

WILLIAM PEREZ,

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

3. The property subject to forfeiture includes, but is not limited to, an order of forfeiture in the amount of $245,890, which represents the proceeds involved in the offense.

4. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,

_____
Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Suzanne Huyler
Special Assistant United States Attorney

By: _____
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

FORM OBD-34
April 22

No. 2018R01972

# UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

WILLIAM PEREZ

## INDICTMENT

Violations: 18 U.S.C. § 1956(h)

A true bill.

_____
Foreperson

Filed in open court this 7th day of April 2022.

_____
Clerk

Bail $_____

GPO 863 525